Our next case is Malkin v. Shasha. We have Mr. Dewey. Good morning, Your Honor. Thank you. May it please the Court, I have reserved three minutes for rebuttal. I want to focus, if I may this morning, on two issues, subject matter jurisdiction and consideration. First, as we explained in our motion to dismiss, it is crystal clear after the Supreme Court's decision in Bajarro that this Court lacks subject matter jurisdiction. Before Bajarro, under this Court's prior precedence, look-through jurisdiction was available for petitions to confirm or vacate under the FAA. The only cases at issue on this appeal are the respective petitions to confirm or vacate The only basis for subject matter jurisdiction was look-through jurisdiction, no longer available after Bajarro, and Bajarro, of course, applies to cases that were on direct appeal. Can you talk to me how you think Bajarro impacts our longstanding pre-Bajarro opinion about when a court orders arbitration and how that retains jurisdiction for any subsequent application? There was no order of arbitration here. In other words, one of the anomalous things, at least according to Justice Breyer, about Bajarro is there would be subject matter jurisdiction for a petition to compel. What happened here, Your Honor, was everybody agreed that the issues were arbitrable, the arbitration was filed, and then there was a separate claiming action. You've basically conflated two questions that I've asked. One is, do you have a position on how Bajarro affects our pre-Bajarro jurisprudence on when there have been arbitration orders? The second thing is what I think you would say is in this instance it doesn't matter because that's not at issue, but I am interested in your position on the first. Exactly correct on the second point, Your Honor. On the first point, I'm not sure I have a position just because that wasn't the sequence here, and it wasn't reached by the Supreme Court in Bajarro. In other words, the Supreme Court did not — But Justice Breyer has an opinion in dissent, I suppose. Right. As ever with Justice Breyer, brilliant and thought-provoking, Your Honor. But I would say, as we said in our brief, dictum in a dissent. And we don't have an order for arbitration either in this case or in the — Correct. — placeholder case. In the tolling out. That's exactly right. Which the other side points to. Totally right, Your Honor. And I should say, this is not a particularly happy result for us. We did file our petition. You mostly won in the — We did, Your Honor. And we did challenge portions of the award. We did it in the Southern District. We were happy to be there. We would be very happy to have this Court address the merits of the dispute. But unfortunately, the Court can't do so unless there's subject matter jurisdiction. And to us, it's just very clear there isn't subject matter jurisdiction. Turning briefly, if the Court does decide to reach the merits, we do believe that the arbitration panel's holding on consideration is completely indefensible, even under the forgiving standard for review of arbitration awards. I might start by saying that the legal principles at issue here are not particularly abstruse or difficult issues, consideration. There really was no factual dispute here. So you do have one of those unusual circumstances, in our view, where the facts as found by the arbitration panel are utterly irreconcilable with their legal conclusion. Very briefly, in summary, in the early 1990s, we went to our investors and we asked them voluntarily to provide an override, which is like a profits participation, if and when there were a capital transaction regarding the Empire State Building. And what we told them was, if you agree to that voluntarily, we will, in essence, charge you lower fees going forward. And there are actually agreements in the record, the 370, the appendix, and after, by which the investors consented to, in essence, an override, if and when there was a capital transaction regarding the Empire State Building. And what they gave up was lower fees going forward, right? Much, if not all, of the overwhelming evidence to that effect was cited by the arbitrators themselves. As the district court pointed out, there are places in the arbitrator's opinion where the arbitrators frame the discussion as according to us, but there are also other places in the opinion where they acknowledge this happened because it was essentially undisputed that this happened. That is to say, we forewent fees to which we would otherwise have been entitled. And that should have been the end of the inquiry. However, the arbitrators then went on to hold that because we made a statement in the S-4 solicitation that we didn't, quote, unquote, pay any consideration, that somehow nullified 20 years' worth of fees we had forewarned. It makes no sense. It would have been a surprise to the leading lights of the securities bar who spent an awful lot of time drafting the solicitation. And it simply takes a sentence that says the supervisor did not pay any consideration and it completely rewrites it to say there was no consideration. It makes no sense at all, as we say, indefensible under even the forgiving standard review. Second, there was another form of consideration, which is the supervisor, we provided additional services to the investors. Once again, on the face of the arbitration award, the arbitrators acknowledged that this was a, quote, unquote, detriment. Do we get to the merits? How do you overcome the issue of service? The district court dismissed for lack of timely service. Don't you, if we were to reach the merits, assuming they were subject matter jurisdiction, wouldn't we have to address that first? You wouldn't, Your Honor, as to the Edelman respondents, who accepted service, so there's no issue with that. As to the other respondents, we filed the petition to vacate timely. It was sent timely to counsel. There had been a longstanding practice, not only in the arbitration, but also in the related federal court proceeding of counsel exchanging all documents. But you agreed that we would have to address the dismissal issue as to those other respondents. I do, Your Honor. I do. So, in summary, there's no subject matter jurisdiction. If there were, we'd ask the court to vacate the challenge parts of the award. If the court has nothing else, I'll sit. Thank you. May it please the court, my name is John Griggs. I'm with the firm of Griggs and Adler PC, and with me today is my partner, Deborah Adler. We represent 10 of the 11 appellees who are referred to in the briefs as the motion to dismiss defendants or respondents, or rather, MTD respondents. With respect to the issue of jurisdiction, we believe very strongly that the court's longstanding rule and law on state federal actions isn't addressed in Badger Oath, and Badger Oath did not change that. And counsel cites the- We don't have a stay in the federal election. I'm sorry, Your Honor? We don't have a stay for arbitration. No, this, I'm referring to the Shasha V. Malkin case. Right, so that's a- She was- I mean, you want us to not only look through, we don't want us to look through, as the Supreme Court said we couldn't, to the complaint in this case, the underlying basis of the claims. You want us to look through to a separate action for which there was also not a stay or order, a stay pending order of arbitration, right? Well, I, with all due respect, I wouldn't refer to that as look through, because it's a separate action filed in 2014, and Judge Tories, in that case, stayed, issued an order staying- But your colleague would say that what was dispositive was that you jointly agreed to it, right? And that this was not the same kind of position. And so I, that was where I started the question off. If you could explain why you think that isn't a distinguishing feature of our pre-Badger Oath jurisprudence. Well, I believe, Your Honor, that that actually is addressed in the Smiga case. It's not in the briefs. It's a Second Circuit decision in 1985. And it makes the point that it does not require an FAA Section 4 order compelling arbitration to stay a case. If a case is stayed by the trial judge pending arbitration, that in and of itself is enough to allow that court, or give that court jurisdiction to hear any orders ensuing from the arbitration. Do you have a citation for that unbriefed case? I'm sorry, Your Honor? Do you have a citation for that unbriefed case? Yes, I do. If you give me just a moment here, because I jumped forward in the outline I prepared. Or you can come back to it, or at least spell it for me. I would also note that the Supreme Court recently, well, recently, 2000, held that, quote, the court with the power to stay action under FAA Section 3. Now, that's different than FAA Section 4. That's just a stay like the one that was issued in Shosha. Has the further power to confirm any ensuing arbitration award. And that's the Cortez Bird Ships versus Bill Harbert Construction, 529 U.S. 193. And I now cede the site to the Smiga case that I referenced. And I would say that, quote from that case, that it does not require a Section 4 order to. Right, but that was different. That was construing a district court's order denying it because it was essentially the equivalent, right? So I still don't think that that gets us around the problem that your opponent would say in that there was no dispute that this was arbitrable. Well, Your Honor, I would say that the language there used by the Smiga court, by the way, the site is 766 F. Second 698, Your Honor, sorry, certainly encompasses what we have here. I would also point out that the judge below in the case we have. I'm sorry, I'm sorry. It encompasses, I need a little bit more than what you just said. It encompasses what we have below here. What do you, I mean, go ahead, elaborate a little bit, please. The, if I might, I have a copy of that decision. It's your time, go ahead. I could just pull it out and. Right, I mean, I have a quote that the district court orders denying Smiga's motion to stay arbitration was essentially the equivalent of an order by the district court to compel arbitration. That's what I was looking for, that's the quote. Right, but in this case, there was no dispute over arbitration. There. Right, because you guys both. Yes, that's correct. There is no dispute over arbitration, but. So then what about the analysis survives then, or what about the analysis is analogizable? The point that I would make in response to that is that Judge Torrey's order here, which is appended to our response to the motion to dismiss, states that this case, her case, her claims are stayed pending arbitration. At the same time, she required the parties to report back to her every 60 days, which they did over all these years. In addition to that, the, we went back to federal court to get an order from that court enforcing arbitral subpoenas that were issued, but were basically ignored. We had to go to the federal court in this case, in the Shosha case. Okay, so you're arguing that we should construe the actions as a dispute over whether or not it was actually arbitrable? Is that how you're asking us to construe it? No, there was no dispute between the parties in the Shosha case as to whether or not there should be arbitration. They agreed. They both interpreted the underlying partnership agreement as requiring arbitration. They agreed to go to arbitration, but at the same time, the people who are the appellees here, filed, of course, a case in federal court, basically having the same allegations in it, and Judge Torrey stayed that case pending arbitration. And the, I've mentioned the supervision she carried out throughout the duration of that, of the case, throughout the duration of the arbitration. And at the conclusion of the arbitration, the court then issued an order instructing the parties to come back to the court and inform the court as to what the parties recommended going forward. Now, what the parties recommended going forward, there's no agreement on. But, and there was a ruling by a magistrate judge that is now pending on objections that the appellees made to his report, and the court hasn't ruled on it yet. So. Counsel, did you say that Judge Torrey has issued orders with respect to arbitration in the Shasher 1 case? I thought you mentioned it, which I hadn't noted before, that responding to subpoenas and the like, they went to her. Did she issue orders? It was actually the magistrate judge, but the orders themselves are attached to my response to the motion to dismiss. The, there was an order to enforce subpoenas issued by the arbitrators. Subsequently, there, the appellees filed a motion to stay the arbitration pending, stay the arbitration to get the court to rule that the counterclaim, which is still talked about in this case, that the counterclaim was outside the arbitrator's jurisdiction. And the magistrate judge issued an order denying that motion and saying that he wouldn't intervene but wait until the end of the arbitration. And he said, you can come back to the federal court if you're still unhappy. And then subsequent to that, we continued to file reports every 60 days. And at the end of the arbitration, in response to the court's instructions, went back to that court, and that resulted in where things stand right now, which I just described. Still pending? Yes. No action taken? No action. One other matter on this. The court below, in this case, relied extensively on a case called Dalla Lange. And it's in the briefs. And since Badgero, this court has taken that case up. Its facts are on all fours with this case that we have. The Second Circuit decision affirmed the lower court without even getting into Badgero, without even raising those jurisdictional issues. And we would submit that that is governing and should control things here because it's the same type of case. Okay. My colleagues have no more questions. Thank you. We'll take it under advisement. Appreciate it. We've got three minutes. It would be helpful if you address Smiga. I think the answer to Smiga, which was not in the briefs, as Judge Nathan noted, threshold answer, without having read the case, is it's a pre-Badgero case. Right? And as Your Honor pointed out during our prior discussion, there's some interesting questions that flow from Badgero. My position is that the court need not reach those questions here, or it is so very clear that there's no subject matter jurisdiction. I mean, I guess maybe, and I haven't read Smiga either, so we'll both opine on things we don't know. But I suppose the question is whether we need to decide here whether essentially the Shasha I action served effectively akin to what Smiga seems to recognize as an order of arbitration pending, you know, a stay pending arbitration. And I'm interested in your reaction to the point that the court seemed to be, via the magistrate judge, issuing orders, compliance with subpoenas and the like, vis-a-vis the arbitration. So there were ancillary orders, but one of the very few. Ancillary to the arbitration. But one of the very few things that the parties to this case have agreed in to is that the only way to get an arbitration award confirmed or vacated is to file a petition to vacate or to confirm. We filed a petition to vacate. Mr. Griggs filed a petition to confirm. Mr. Baez filed a petition to confirm. It's page 103, sorry, it's page 37 of the Apolis brief, right? So I don't think you necessarily need to go there. And to your prior comment, Judge Nathan, I am unaware of any authority, certainly post-Badgero, that says you can effectively import jurisdiction from one federal case to another federal case, which is what they're asking you to do. And I might note further in that regard that the Adelman respondents did not even oppose our motion to dismiss. There also, as I mentioned, a number of post-Badgero circuit court cases where courts of appeals have asked vacated rulings affirming or disaffirming arbitration awards and sending them back to be sent to state court. So I don't think you need to address it, Judge Nathan. And if you do, I think the answer is very clear. Did Badgero have, in this anchoring argument, Badgero had another case pending and the Supreme Court in Badgero did not rely on that for? I believe that's correct, Your Honor. Correct? I believe that's correct. Is that an implicit resolution of this issue or not? I would say so, but again, I don't think it's a particularly difficult or a close call given that the only cases before the court are cases that were separately filed and as to which there's absolutely no subject matter jurisdiction. Something that has come up in just this oral argument is the notion of what we characterize Judge Torres' decision below. Was it effectively an administrative stay in which you would argue that that separates it for some of the pre-Badgero jurisprudence, which you are urging us to not touch because there's not a debate over whether or not it was arbitrable. The question is if we decide that it is something more than that, as your colleague suggested, how does that impact the analysis we're supposed to be doing? Two responses. The first response was, as your Honor pointed out, stipulate no dispute at all about the threshold issue of arbitrability as Mr. Griggs conceded. Even if, second point, even if that were not the case, my position would be that post-Badgero, that is not enough to take subject matter jurisdiction from case one and create subject matter jurisdiction in case two where there's not otherwise federal jurisdiction. Yeah. Unfortunately, one of us has to decide more about how we interpret Badgero and what we do about the dissent and the like, so we're trying to figure out what we need to do. How would you characterize, I mean, I guess you said it with the ancillary. You think that, you think it's more consistent that this was an administrative stay because it was stipulated? Absolutely so, your Honor. Okay. Okay. Thank you. Thank you very much. I take the case under advisement.